**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 20-cv-80148-SINGHAL**

MEASURED WEALTH PRIVATE CLIENT
GROUP, LLC, a New Hampshire limited
liability company,

      Plaintiff,

v.

LEE ANNE FOSTER, an individual, RICHARD
KESNER, an individual, STOEVER, GLASS &
CO., INC., a New York corporation, and
STOEVER GLASS WEALTH MANAGEMENT,
INC., a New York corporation,

      Defendants.

_____/

## ORDER

      **THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Plaintiff's

Amended Complaint ("Motion") (DE [28]).[1]  Plaintiff Measured Wealth Private Client

Group, LLC ("Measured Wealth") is a registered wealth management and investment

advisor.  Defendants are two former employees of Measured Wealth (Lee Anne Foster

and Richard Kesner) and Stoever, Glass & Co, Inc. ("SGC") and Stoever Glass Wealth

Management, Inc. ("SGWM") (all collectively, "Defendants").  SGC and SGWM are "sister

companies" who share resources and hold one another's records and information as part

---

[1] The Court has reviewed the Motion and the briefing both in opposition and in support.
The Court would like to take this brief opportunity to commend counsel from both sides
on their well-written and well-articulated briefs.  Each side presented a compelling
argument and the Court thoroughly enjoyed reading all submitted memoranda.

of the "Stoever Glass family of companies."[2]   Am. Compl. ¶ 5 (DE [24]).  Kesner was employed by Measured Wealth from mid-2014 through June 30, 2019; Foster, likewise, from mid-2014 through July 8, 2019.  *Id.* ¶¶ 8–9, 31, 50.  Each voluntarily resigned their positions at Measured Wealth on the respective dates and joined SGC or SGWM, direct competitors of Measured Wealth.  *Id.* ¶¶ 36, 55, 62–63.

While employed by Measured Wealth, Foster and Kesner had access to confidential, non-public information about clients, such as names, contact information, investment holdings, and other financial information.  *Id.* ¶¶ 11–14, 26, 44.  This information was valuable, confidential, and not generally known or readily ascertainable by the public or Measured Wealth's competitors.  *Id.*

Forming the basis for this suit, Measured Wealth alleges that, prior to leaving, Foster and Kesner each individually schemed to acquire and misappropriate Measured Wealth's confidential client information and to use that information to induce clients to bring their business to SGC or SGWM.  *Id.* ¶¶ 23, 42.  Shortly after resigning, Foster and Kesner joined SGWM where they "used Measured Wealth's trade secrets that [they] acquired both during and after [their] employment with Measured Wealth to unfairly compete with Measured Wealth."  *Id.* ¶ 37.

In the Amended Complaint (DE [24]), Measured Wealth brings thirteen counts against Foster, Kesner, and SGC and SGWM.  Its primary claims arise under the theory of misappropriation of trade secrets—that is, claims under the federal Defend Trade Secrets Act ("DTSA") and Florida's Uniform Trade Secrets Act ("FUTSA").  Measured

---

[2] There is a strong disagreement among Measured Wealth and Defendants regarding the corporate formalities of SGC and SGWM.  At this point—on a motion to dismiss—the Court assumes the allegations pled in the Amended Complaint are true.

Wealth also brings garden-variety counts like breach of the duty of loyalty, tortious interference with a business relationship, and violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  The thirteen counts are as follows:

I      DTSA (against Foster)
II     DTSA (against Kesner)
III    DTSA (against SGC and SGWM)
IV    FUTSA (against Foster)
V     FUTSA (against Kesner)
VI    FUTSA (against SGC and SGWM)
VII   Breach of Duty of Loyalty (against Foster)
VIII  Breach of Duty of Loyalty (against Kesner)
IX    Tortious Interference with a Business Relationship (against Foster)
X     Tortious Interference with a Business Relationship (against Kesner)
XI    Tortious Interference with a Business Relationship (against SGC and SGWM)
XII   FDUTPA (against Foster)
XIII  FDUTPA (against Kesner)

Defendants have moved to dismiss based on the reasons explained below.  The Court has considered the arguments and this order follows.

## I.      **LEGAL STANDARD ON A MOTION TO DISMISS**

"'When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Worthy v. City of Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); s*ee also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Worthy*, 930 F.3d at 1217.  The Court is guided by the well-known principle that, on a motion to dismiss for failure to state a claim, the Court assumes all well-pled allegations in the Complaint are

true and views them in the light most favorable to the plaintiff.  *Jackson v. Okaloosa Cty.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

## II.   <u>DISCUSSION</u>

Defendants argue the Amended Complaint must be dismissed for three reasons. First, as to SGC and SGWM, they contend the Amended Complaint is an impermissible shotgun pleading, violative of Federal Rules of Civil Procedure 8(a) and 10(b).  Second, they argue that Measured Wealth fails to state claims under both DTSA and FUTSA because the allegations in the Amended Complaint do not demonstrate or support a reasonable inference that Measured Wealth took the required reasonable steps to safeguard the confidential information at issue.  Finally, Defendants move to dismiss all of Measured Wealth's other claims, arguing FUTSA preempts them.  Each argument will be discussed in turn.

### A.   **SHOTGUN PLEADING**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Federal Rule of Civil Procedure 10(b) states, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."  "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).  "The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each

successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321.

Defendants insist the Amended Complaint is a shotgun pleading because it raises allegations against both SGC and SGWM with no regard for their corporate formalities. They refer to paragraph 38 of the Amended Complaint and argue that, because each of the succeeding paragraphs, including the individual counts, combines SGC and SGWM into one entity and makes no attempt to parse the actions attributable to each respective entity, the Amended Complaint impermissibly commingles allegations. While this gripe is actually true, it does not implicate Rules 8(a) or 10(b).

What Defendants take issue with is not a "shotgun pleading." The Complaint does not violate the most basic rule for a shotgun pleading: None of the counts incorporates the allegations from the preceding counts. *See Weiland*, 792 F.3d at 1320; *see also ATP Sci. Proprietary, Ltd. v. Bacarella*, 2020 WL 3868701, at *3 (S.D. Fla. July 9, 2020). In fact, the Court finds the Amended Complaint meticulously pled, properly parsing the relevant and applicable factual allegations to each count. For instance, Count I, which begins at paragraph 67, incorporates and realleges only paragraphs 1 through 41. Count II, in turn, which begins at paragraph 76, incorporates and realleges only paragraphs 1 through 21, and 42 through 57. Every count pled in the Amended Complaint follows suit. And every count pled in the Amended Complaint incorporates *only* those allegations that give rise to that particular count.

Rather, what Defendants take issue with is Measured Wealth's obvious refusal to discriminate between SGC and SGWM for pleading purposes. But it does not need to do so. In each of the three counts where SGC and SGWM are named defendants, Measured

Wealth specifically alleges that SGC and SGWM acted in concert and their actions were indistinguishable.  Specifically, Measured Wealth alleges that SGC and SGWM engaged in the same conduct because SGC and SGWM have themselves failed to distinguish which entity is performing its conduct through its actions.  *See, e.g.*, Am. Compl. ¶ 5 ("SGC and SGWM share resources and hold each other's records and information as part of the Stoever Glass family of companies."); *id.* ¶ 7 ("[B]oth businesses operate out of the same location at 225 NE Mizner Blvd., Suite 250, Boca Raton, Florida and only SGC is registered to do business in Florida. . . . [M]any employees of Stoever Glass are simultaneously employed by both SGC and SGWM. These employees will simultaneously provide both investment advice as wealth management advisors as well as brokerage services by selling securities to those same clients . . . .").  These are all well-pled allegations that, for purposes of a motion to dismiss, the Court assumes are true.  In essence, Defendants ask the Court to resolve factual matters about the corporate formalities and workings of SGC and SGWM on a motion to dismiss.  The Court declines to do so.

## B.  CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS

Counts I through VI are claims for misappropriation of trade secrets under both federal and state law.  These counts form the real underlying crux of Measured Wealth's claims against Defendants.  Under the federal DTSA, a plaintiff must show the following to make out a prima facie case: "that it (i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff and (b) for which the plaintiff took reasonable measures to keep secret, and (ii) the defendant used and/or disclosed that information, despite (iii) a duty to maintain its secrecy."  *Sentry Data Sys., Inc. v. CVS*

*Health*, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018).  The DTSA defines a "trade secret" as

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).

Similarly, under Florida law, FUTSA provides a cause of action for the misappropriation of trade secrets, as well.  *See* Fla. Stat. §§ 688.001–.009.  "To prevail on a FUTSA claim, a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated."  *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (internal quotation omitted).  FUTSA defines "trade secret" similarly:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4).  Under both the DTSA and FUTSA, "misappropriation" is generally defined as the same meaning: "the acquisition of a secret by someone who knows or has reason to know that the secret was improperly obtained or who used improper means to

7

obtain it." *Yellowfin Yachts, Inc.*, 898 F.3d at 1297 (citing *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017) and section 688.002(2), Florida Statutes).

Defendants argue that Measured Wealth's claims under both authorities fail because Measured Wealth did not take adequate reasonable steps to protect its trade secrets. They argue that "glaringly absent" from the Amended Complaint is any allegation that Measured Wealth required Foster or Kesner to enter into confidentiality or nondisclosure agreements—the existence of at least one of these being necessary to maintain trade-secret claims. For this position, they rely on *Telmurian v. Piccolo*, 2019 WL 1763022 (S.D. Fla. Apr. 22, 2019). The Court agrees with Defendants in their interpretation of *Telmurian*. There, a court in this district determined the plaintiffs failed to take reasonable steps in safeguarding their confidential materials because they did not require the defendants to sign a confidentiality agreement. *Telmurian*, 2019 WL 1763022, at *11.

Where Defendants err is their understanding that case law creates a per-se requirement to allege a confidentiality or nondisclosure agreement. Several other courts in this district have denied motions to dismiss even in the absence of such agreements. *See Coihue, LLC v. PayAnyBiz, LLC*, 2018 WL 7376908, at *5 (S.D. Fla. Feb. 6, 2018) (finding that the allegations that the company had confidentiality policies and "password restricted" computer systems "are sufficient for the Court to draw a reasonable inference that the Plaintiffs took reasonable steps to protect the secrecy of their trade secrets")*; Fortiline, Inc. v. Moody*, 2013 WL 12101142, at *3 (S.D. Fla. Jan. 7, 2013) (describing how the plaintiff employer adequately maintained the confidentiality of its trade secrets by

showing that it kept the information protected by computer passwords and that the plaintiff employer "had rules governing disclosure and confidentiality in its employee handbook"); *Se. Mech. Servs., Inc. v. Brody*, 2008 WL 4613046, at *12 (M.D. Fla. Oct. 15, 2008) (finding that the plaintiff adequately showed that it had protected its confidential information by having confidentiality policies and protecting that information with passwords).   In other words, *Telmurian* is favorable to Defendants' position, but not demonstrative of all the case law.   Based on all the foregoing, the Court sees the existence of a confidentiality or nondisclosure agreement as one of many factors to be considered.

Measured Wealth has pled sufficient allegations at least for a motion to dismiss. For example, it alleges that it distributed and educated its policies of keeping confidential information private.  Am. Compl. ¶ 70.  The confidential information was accessible only though a username and password.  *Id.*  And its employees agreed to comply with all policies as a condition to being granted access to the information.  *Id.*

### C.   PREEMPTION

Defendants move to dismiss the remaining claims under the theory that they are all preempted by FUTSA.  In Counts VII through XIII, Measured Wealth brings garden-variety claims, including breach of duty of loyalty against Foster and Kesner (Counts VII and VIII), tortious interference with a business relationship against Defendants (Counts IX, X, and XI), and FDUTPA against Foster and Kesner (Counts XII and XIII).

Generally, FUTSA "displace[s] conflicting tort, restitutionary, and other law [that] provid[es] civil remedies for misappropriation of a trade secret."  Fla. Stat. § 688.008(1). It follows that FUTSA does not preempt "[o]ther civil remedies that are not based upon

misappropriation of a trade secret." *Id.* § 688.008(b)(2). "To determine whether allegations of trade-secret misappropriation preempt a plaintiff from sufficiently pleading a separate, but related tort, the Court must evaluate whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by § 688.008." *Sentry Data Sys., Inc.*, 361 F. Supp. 3d at 1294 (internal quotation omitted).

From a review of the case law, this appears to be a case-by-case determination. In other words, there do not appear to be causes of action that are per-se preempted by FUTSA. For example, in *Sentry Data Systems*, the court dismissed FDUTPA, common-law conversion, and common-law unfair-competition claims, finding the plaintiff did nothing more than "re-allege all the prior allegations" of the FUTSA claim. *Id.* at 1295 ("[They] each re-allege all the prior allegations of the Complaint and are based on the 'conversion' or 'tak[ing]' of the same trade secrets and proprietary information as the misappropriation of trade secrets claims."). But, for the tortious-interference claims, the court found the allegations giving rise to those claims to be "sufficiently distinct." *Id.* Con

To begin, the Court has already noted above Measured Wealth's meticulous pleading. While this saved the Amended Complaint from being a shotgun pleading, it serves as an issue under a preemption analysis. Each count against a specific defendant incorporates and re-alleges the same factual allegations as the other counts. This potentially could prove fatal in determining whether a non-trade-secret count is based on the same underlying allegations.

For example, each count against Foster incorporates and re-alleges the same factual allegations as each of the other counts against her. And, critical to this analysis,

10

Case 9:20-cv-80148-AHS   Document 49   Entered on FLSD Docket 07/13/2020   Page 11 of 14

they incorporate and re-allege the same allegations as those in the FUTSA claim against her. To be sure, *each* count against Foster begins with the following paragraph: "Measured Wealth incorporates by reference the above allegations contained in paragraphs 1 through 41 as if fully set forth herein." *See* Am. Compl. ¶¶ 67, 94, 116, 139, 163.

The same is true with each count against Kesner, and those against SGC and SGWM. Each of the counts against Kesner begins with the following paragraph: "Measured Wealth incorporates by reference the above allegations contained in paragraphs 1 through 21, and 42 through 57 as if fully set forth herein." *Id.* ¶¶ 76, 102, 127, 146, 172. Likewise, each of the counts against SGC and SGWM begins with the following paragraph: "Measured Wealth incorporates by reference the above allegations contained in paragraphs 1 through 21, 34, 52, and 58 through 66 as if fully set forth herein." *Id.* ¶¶ 85, 109, 153. Thus, there is already a presumption that the non-trade-secret counts are based on the same underlying wrong as the trade-secret counts because they all incorporate and re-allege the same allegations.

### 1.    The counts for breach of fiduciary duty are not preempted.

Counts VII and VIII (the counts against Foster and Kesner for breach of fiduciary duty) are sufficiently distinct from the FUTSA counts. In these counts, Measured Wealth pleads allegations that provide for additional bases of liability other than liability based on trade secrets, such as: (1) Foster/Kesner violated Measured Wealth's policies by using Measured Wealth's confidential client information and client lists while she/he was still employed by Measured Wealth to poach clients; (2) Foster/Kesner violated Measured Wealth's policies by disclosing Measured Wealth's confidential client information and

client lists to SGC OR SGWM while she/he was still employed by Measured Wealth to help SGC OR SGWM poach Measured Wealth's clients; and (3) Foster/Kesner violated the duty of loyalty owed to Measured Wealth by grooming Measured Wealth's clients and inducing them to terminate their relationship with Measured Wealth while she/he was still employed by Measured Wealth.  Am. Compl. ¶¶ 122–123, 125, 133–135, 137.  Though certainly *related* to a claim for misappropriation of trade secrets, these allegations do not speak *only* to such; these allegations speak also to liability for a breach of fiduciary duty. *See also Agostinacchio v. Heidelberg Eng'g, Inc.*, 2019 WL 3243408, at *8 (S.D. Fla. Feb. 5, 2019) (finding that a claim of a breach of fiduciary duty of loyalty is not preempted when the claim is also based upon the solicitation of customers during employment).

### 2.    The counts for tortious interference are preempted and dismissed.

Counts IX, X, and XI (the counts against Defendants for tortious interference with a business relationship) are preempted by FUTSA and are dismissed.  Unlike the claims for breach of fiduciary duty above, the Court finds insufficient additional factual allegations that distinguish these counts from the trade-secret counts.

Moreover, Defendants have cited to a muckle of cases supporting dismissal of tortious interference claims as preempted by FUTSA claims.  *See also Pelfrey v. Mahaffy*, 2018 WL 3110794, at *4 (S.D. Fla. Feb. 7, 2018) (dismissing claim for tortious interference with business relationships as preempted where tortious interference, like FUTSA claim, was based on allegations of stealing confidential information from other party and then using it to divert other party's clients to a competing  business); *Jouria v. CE Res., Inc.*, 2017 WL 3868422, at *4 (S.D. Fla. July 17, 2017) (dismissing tortious interference claim as preempted by FUTSA where "underlying misconduct for both claims [wa]s the same");

*Selectica, Inc. v. Novatus, Inc.*, 2015 WL 12843841, at *3–4 (M.D. Fla. Sept. 30, 2015) (finding FUTSA preempted claims alleging tortious interference with business relationships through the use of trade secret information to solicit current and prospective customers); *Am. Registry, LLC v. Hanaw*, 2014 WL 12606501, at *6 (M.D. Fla. July 16, 2014) (finding FUTSA preempted tortious interference claims where it was alleged that a defendant used trade secret information to solicit and steal customers).

### 3.     The FDUTPA counts are preempted and are dismissed.

Finally, as for Counts XII and XIII (the counts against Foster and Kesner for violations of FDUTPA) both sides cite to several cases that are supportive of their argument.   Defendants cite to cases where courts dismissed FDUTPA claims as preempted by FUTSA.   *E.g.*, *Am. Registry*, 2014 WL 12606501, at *6 (dismissing FDUTPA claim based on FUTSA preemption where claim was based on allegations defendant used trade secret information to solicit and steal customers); *Dev. Techs., LLC v. Valmont Indus., Inc.*, 2016 WL 7320908, at *6 (M.D. Fla. July 18, 2016) (dismissing FDUTPA claim as preempted where plaintiff alleged as part of the claim that Defendants "willfully and maliciously misappropriated [plaintiff's] Confidential Information and ideas"). Of course, Measured Wealth cites to cases where courts denied motions to dismiss.   *E.g.*, *XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1262–64 (S.D. Fla. 2016); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1181 (M.D. Fla. 2005) (finding dismissal of FDUTPA claim improper when the plaintiff claims that misrepresentation was used to acquire the trade secrets and induced the plaintiff into continuing to do business with defendants).   The Court finds each of these cases instructive, but none dispositive.

As stated above, in determining preemption, "the Court must evaluate whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by § 688.008." *Sentry Data Sys., Inc.*, 361 F. Supp. 3d at 1294.  In these counts, Measured Wealth alleges that Foster and Kesner (1) "enacted a scheme to induce Measured Wealth's clients to become clients of [their] own by and through the Stoever Glass entities"; (2) used deceptive and covert means "to take confidential information and groom Measured Wealth clients"; and (3) concealed the fact that they had "misappropriated [Measured Wealth clients'] confidential information for [their] own use and distributed that information to" SGC or SGWM. Am. Compl. ¶¶ 165– 167, 174–176.  The Court agrees with Defendants that these allegations are merely reframed allegations from the claims for misappropriation of trade secrets.  Thus, Counts XII and XIII are preempted by FUTSA and are dismissed.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Motion (DE [28]) is **GRANTED IN PART AND DENIED IN PART**.  The Motion is **DENIED** as to Counts I through VIII.  The Motion is **GRANTED** as to Counts IX through XIII.

2.      Counts IX through XIII are **DISMISSED WITH PREJUDICE**.

3.      Defendants shall file their answer to the Amended Complaint within fourteen (14) days from the date of this order.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this **13th** day of July 2020.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies served to counsel via CM/ECF